Robert B. Carey (SBN 011186)
John M. DeStefano (SBN 025440)
E. Tory Beardsley (SBN 031926)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
johnd@hbsslaw.com
toryb@hbsslaw.com

Evan S. Goldstein (SBN 011866)
**GOLDSTEIN WOODS**
706 E. Bell Road, Suite 200
Phoenix, Arizona 85022
Telephone: (602) 569-8200
Email: egoldstein@gwfirmaz.com

*Attorneys for Plaintiffs*

*[Additional counsel on signature page]*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Jimmie Jones, Jr. and Kelly Jones, surviving parents of deceased Steven Jones,<br><br>Plaintiffs,<br><br>v.<br><br>Garrison Property and Casualty Insurance Company, a Texas Corporation; USAA Casualty Insurance Company, a Texas Corporation,<br><br>Defendants. | Case No. ______________________<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. PARTIES ..... 2

III. JURISDICTION AND VENUE ..... 3

IV. GENERAL ALLEGATIONS AS TO ARIZONA LAW ..... 4

V. DEFENDANTS IMPROPERLY REFUSE TO DISCLOSE AND STACK AVAILABLE COVERAGES ..... 7

VI. CLASS ACTION ALLEGATIONS ..... 12

FIRST CLAIM FOR RELIEF (BREACH OF CONTRACT) ..... 16

SECOND CLAIM FOR RELIEF (BAD FAITH) ..... 16

PRAYER FOR RELIEF ..... 18

## I. INTRODUCTION

1. Under Arizona law, limitations on uninsured motorist ("UM") and underinsured motorist ("UIM") coverage (collectively "UM/UIM") that are not specifically authorized by the Uninsured/Underinsured Motorist Act (the "UMA") are void. A.R.S. § 20-259.01; *Cundiff v. State Farm Mut. Auto. Ins. Co.*, 217 Ariz. 358, 360, 174 P.3d 270, 272 (2008). Over the years, the Arizona Supreme Court "has considered and rejected numerous attempts to limit UIM coverage in ways not expressly permitted by the statute." *Cundiff*, 217 Ariz. at 361, 174 P.3d at 272.

2. Nonetheless, USAA Casualty Insurance Company ("USAA") and Garrison Property and Casualty Company ("Garrison") (collectively, "Defendants") flout this well-established and time-worn rule. When an insured presents UM or UIM claims under policies purchased by multiple individuals from USAA affiliates, Defendants fail to apply and make available—and pay, where warranted—the full UM/UIM limit under each applicable policy. Instead, Defendants insist that the "other insurance" clause of the policy permits USAA and its affiliates to prorate the policy limits of the applicable policies, capping the insured at a fraction of the combined total of the policy limits and depriving them of full compensation for the injuries suffered. Because the UMA does not expressly authorize any exception pertaining to multiple policies purchased by different insureds, Defendants cannot prorate coverage and the "other insurance" clause in the USAA form policy is ineffective in this context. By unlawfully prorating UM/UIM coverage, Defendants have systematically capped the benefits due to their insureds, breached their insurance contracts, and committed bad faith by misrepresenting policy terms and prorating payments of UM/UIM benefits when insureds are injured or killed in auto accidents.

3. Insurers owe a duty of good faith and fair dealing to their first-party insureds—which includes all UM/UIM claims. In accordance with those duties, insurers must work to find all available coverage for the insured, reasonably investigate the claim and applicable law, identify and disclose coverages and limits, inform the insured accurately about available coverages and benefits, construe the policy (or policies) in

accordance with known law, treat each insured fairly and reasonably, not place their own interests ahead of the interests of their insured's, and not conceal or misrepresent pertinent policy provisions, benefits, or coverages.[1]

4. In handling UM/UIM claims for their customers who are insured under multiple auto insurance policies, Defendants have breached each of these duties as well as the insurance contracts themselves.

5. Plaintiffs bring this action on behalf of all individuals insured by Defendants who made UM/UIM claims under multiple policies purchased by separate insureds from Defendants or their affiliates and who exhausted a prorated limit of coverage.

6. As a matter of uniform and standard practice and procedure, USAA and Garrison provided coverage under all available policies but prorated that coverage even though the UMA does not expressly authorize proration. Defendants, therefore, were required to disclose and provide full UM/UIM coverage under Arizona law and the policies. Defendants failed to do so. USAA and Garrison misrepresented and underpaid the benefits due, in breach of their contractual and legal duties to Plaintiffs and other insureds.

## II. PARTIES

7. Plaintiffs Jimmie Jones, Jr. ("Jimmie") and Kelly Jones ("Kelly") are married and are residents and citizens of Arizona.

8. Jimmie and Kelly Jones are the statutory claimants for the wrongful death of Steven Jones ("Steven"), their son, under Arizona law, including A.R.S. §§ 12-611 and 12-

---

[1] *See, e.g.*, Arizona Administrative Code § 20-6-801(D)(1) ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented."); *Nardelli v. Metro. Grp. Prop. and Cas. Ins. Co.*, 230 Ariz. 592, 603, 277 P.3d 789, 800 (App. 2012); *Sarchett v. Blue Shield of Cal.*, 233 Cal. Rptr. 76, 84-86, 729 P.2d 267, 275-77 (1987) ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *State Farm Mut. Auto. Ins. Co. v. Shuman*, 175 Ind. App. 186, 370 N.E.2d 941 (1977) (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

612. They are also insureds under all three policies by virtue of the death of their son, their statutory entitlement to pursue his harms and losses, and the terms of the policies themselves.

9. Garrison is an insurance company incorporated under the laws of Texas, with its principal place of business in Texas, but which does business in the state of Arizona.

10. USAA is an insurance company incorporated under the laws of Texas, with its principal place of business in Texas, but which does business in the state of Arizona.

11. Garrison is a subsidiary of USAA. Garrison tells its insureds, including Plaintiffs, that it "is authorized to use the USAA logo, a registered trademark of United Services Automobile Association." *See, e.g.*, Exhibit A, Nov. 20, 2024 Letter at 3.

## III. JURISDICTION AND VENUE

12. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy (including the value of both the disputed claim for $75,000 in coverage and attorneys' fees incurred to date) exceeds $75,000, exclusive of costs and interest, and Plaintiffs and the Defendants are citizens of different states. This Court also has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity exists. Plaintiffs are citizens of Arizona, and Defendants are citizens of Texas (where they are incorporated and have their principal place of business).

13. Venue is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to claims arising from this Incident described herein occurred within this District and the Defendants' Policies were issued in this state.

14. Whenever it is alleged in this Complaint that Defendants did any act or thing, it is meant that USAA and/or Garrison and their agents, officers, servants, employees or representatives did such act or thing and when such act or thing was done, it was done with full authorization or ratification of USAA or Garrison or was done in the normal and routine course and scope of business, or with the actual, apparent and/or implied authority of the Defendants and their officers, agents, servants, employees or representatives.

Specifically, the insurer Defendants are liable for the actions of their affiliates, officers, agents, servants, employees, and representatives.

15. Plaintiffs are informed and believe and therefore allege that Defendants jointly and in concert undertook to perform the acts as alleged herein, that each Defendant had full knowledge of the act of the co-Defendant as alleged herein, and that each Defendant authorized or subsequently ratified the acts of each co-Defendant as alleged herein, making each co-Defendant an agent of the other Defendant and making each Defendant jointly responsible and liable for the acts and omissions of each co-Defendant as alleged herein.

## IV. GENERAL ALLEGATIONS AS TO ARIZONA LAW

16. Arizona's statute governing UM/UIM coverage is A.R.S. § 20-259.01 (the "UMA"). It requires auto insurers to offer UM and UIM coverage for each insured vehicle and governs the terms of that coverage.

17. The Arizona Supreme Court has held and repeatedly reiterated that "exceptions to coverage not permitted by the statute are void." *Cundiff*, 217 Ariz. at 360, 174 P.3d at 272 (quoting *Taylor*, 198 Ariz. at 314 ¶ 10, 9 P.3d at 1053); *Am. Family Mut. Ins. Co. v. Sharp*, 229 Ariz. 487, 277 P.3d 192 (2012). "We will not interline the [UM] and UIM statutes to permit exclusions that have not been mentioned by the legislature." *Cundiff*, 217 Ariz. at 361, 174 P.3d at 273. The statute has "a remedial purpose and must be construed liberally in favor of coverage." *Sharp*, 229 Ariz. at 492, 277 P.3d at 197 (quoting *Taylor v. Travelers Indem. Co. of Am.*, 198 Ariz. 310, 9 P.3d 1049 (2000)).

18. The UMA expressly provides that UIM coverage applies only to losses that exceed the liability limits of the at-fault driver. A.R.S. § 20-259.01(F), (G) ("To the extent that the total damages exceed the total applicable liability limits, the underinsured motorist coverage provided in subsection B of this section is applicable to the difference.").

19. The UMA also specifies that uninsured and underinsured motorist benefits are mutually exclusive: "Uninsured and Underinsured motorist coverages are separate and distinct and apply to different accident situations." A.R.S. § 20-259.01(H).

20. The UMA also provides a mechanism for insurance companies "under a common management" to preclude stacking (aggregating) the benefits of UM/UIM policies or coverages "purchased **by one insured** on different vehicles" if the insurer strictly complies with certain policy and notice requirements. A.R.S. § 20-259.01(H) (emphasis added); *Franklin v. CSAA Gen. Ins. Co.*, 255 Ariz. 409, 410, 532 P.3d 1145, 1146 (2023). These anti-stacking rules apply only where multiple policies or coverages were purchased "**by one insured**." A.R.S. § 20-259.01(H) (emphasis added). They do not apply in a situation where, as here, the claimant was insured under three separate policies purchased by three separate insureds.

21. The UMA permits no other limitations on UM/UIM coverage. *Am. Family Mut. Ins. Co. v. Sharp*, 229 Ariz. 487, 491 ¶ 12, 277 P.3d 192, 196 (2012) ("Subsection (H) is the only UMA provision that authorizes any limitation of UM or UIM coverage."). Thus, the Arizona Supreme Court has consistently rejected insurers' attempts to impose limitations on coverage not expressly permitted by the UMA. *Cundiff*, 217 Ariz. at 361, 174 P.3d at 273 n. 3 (collecting cases).

22. With respect to other insurance clauses in particular, the Arizona Supreme Court has "consistently found it contrary to public policy for an insurer to reduce or escape liability by use of exclusions or by offsetting mandatory policy coverages against other coverages available to an insured." *Brown v. State Farm Mut. Auto. Ins. Co.*, 163 Ariz. 323, 327, 788 P.2d 56, 60 (1989)

23. In *Brown*, 163 Ariz. at 328, 788 P.2d at 61, the Arizona Supreme Court held that "other insurance" clauses violate public policy in the UIM context and cannot be applied to reduce coverage below the limit that was purchased:

> Implicit in the nature of the UIM transaction contemplated by the statutes is the concept that UIM insurance provided by the insured's own carrier will protect him or her over and above the other insurance that may apply in a particular accident. Wilson, 162 Ariz. at 253, 782 P.2d at 729. To hold, therefore, as did the court of appeals, that the UIM coverage Jennifer's stepfather purchased may be reduced or eliminated by application of the escape provision in the other insurance clause, defeats the very objectives the statute requiring mandatory offering of such coverage was intended to attain.

24. In *Rashid v. State Farm Mut. Auto. Ins. Co.*, 163 Ariz. 270, 275, 787 P.2d 1066, 1071 (1990), the Arizona Supreme Court invalidated an excess/escape clause because it was not authorized by the statute: "Where the insured has paid premiums for a particular limit that the [Uninsured Motorist Act] entitles him to purchase, the statute contains no exception permitting an insurer to set a different limit by eliminating or reducing recovery below actual damages simply because another policy fortuitously also provides some coverage."

25. The UMA does not expressly permit—and therefore prohibits—insurers from applying anti-stacking or "other insurance" provisions to limit recovery under multiple policies purchased by separate insureds. *Brown*, 163 Ariz. at 328, 788 P.2d at 61. "Notwithstanding creative policy drafting intended to evade statutory requirements." *Franklin*, 255 Ariz. at 410, 532 P.3d at 1146, the UMA still does not permit the insurer to "set a different limit" than the UIM limit purchased by the customer "simply because another policy fortuitously also provides some coverage." *Rashid*, 163 Ariz. at 275, 787 P.2d at 1071. "Our cases have not looked with favor on insurers' use of exclusions, offset clauses, **other insurance clauses, excess/escape clauses, and the like** to reduce or eliminate coverages the legislature has required insurers to provide their customers." *Rashid*, 163 Ariz. at 275, 787 P.2d at 1071 (emphasis added). "The UM and UIM statutes do not contain exceptions for the myriad of fine print exclusions, exceptions, excess and escape provisions that in previous years provided opportunities for both the finely sharpened quill of the ingenious draftsman and the skill of the adroit litigator." *Id.* at 275, 787 P.2d at 1071.

26. Implied in every insurance contract in Arizona is a covenant of good faith and fair dealing owed to Plaintiffs. Under the contractual covenant of good faith and fair dealing, an insurer must deal fairly with an insured, giving in all matters, equal consideration to the interests of the insured and not placing its own interests ahead of the insured's. *See, e.g.*, *Rawlings v. Apodaca*, 151 Ariz. 149, 156-57, 726 P.2d 565, 572-73 (1986).

27. The contractual covenant of good faith and fair dealing also includes an obligation to inform the insureds about the extent of coverage and their rights under the policy and to do so in a way that is not misleading.[2]

## V. DEFENDANTS IMPROPERLY REFUSE TO DISCLOSE AND STACK AVAILABLE COVERAGES

28. On February 3, 2024, Plaintiffs' son, 24-year-old Steven Jones, was operating his 2005 Yamaha motorcycle southbound on South Higley Road in Gilbert, Arizona.

29. Elizabeth Daly ("Daly") was driving a Toyota Prius northbound on South Higley Road when entering the intersection of South Higley Road and East Germann Road, attempting to make a left turn onto Germann Road.

30. Daly's vehicle struck Steven's motorcycle ("the Collision").

31. As a result of the Collision, Steven died at the scene.

32. Daly was negligent in her actions leading to and including the Collision. Her negligence caused the Collision.

33. At the time of the accident, Daly had auto liability insurance applicable to the Collision with limits of only $250,000 per person, $500,000 per accident.

34. Daly had no other auto liability insurance applicable to the Collision.

35. Daly's insurer tendered, and Plaintiffs accepted, the $250,000 bodily injury limit under her automobile policy.[3]

---

[2] *See, e.g.*, Arizona Administrative Code § 20-6-801(D)(1) ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented."); *Nardelli v. Metro. Grp. Prop. and Cas. Ins. Co*., 230 Ariz. 592, 603, 277 P.3d 789, 800 (App. 2012); *Sarchett v. Blue Shield of Cal*., 233 Cal. Rptr. 76, 84-86, 729 P.2d 267, 275-77 (1987) ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *State Farm Mut. Auto. Ins. Co. v. Shuman*, 175 Ind. App. 186, 370 N.E.2d 941 (1977) (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

[3] Although there are multiple statutory wrongful death claimants, they are treated as "one person" under standard insurance policies; they are, therefore, limited to the "per person" limits rather than the "per accident" limits.

36. Daly's auto liability insurance limits are inadequate to fully compensate Plaintiffs for the wrongful death of Steven.

37. Daly, therefore, was underinsured as to Plaintiffs. *See* A.R.S. § 20-259.01(G).

38. Steven had insured the motorcycle he was driving at the time of the Collision through Progressive under Policy No. 955950585 (the "Progressive Policy").

39. The Progressive Policy did not include UIM coverage.

40. Progressive did not find coverage for the Collision and did not pay any monies for the death of Steven.

41. At the time of the Collision, Plaintiffs Jimmie and Kelly Jones, their son, Steven, and their daughter, Pamela Jones ("Pamela") all resided in the same home.

42. At the time of the Collision, Steven insured his 2008 Volkswagen Jetta, through Garrison under Policy No. GAR 016967850 7101. *See* Exhibit B, Steven Jones Policy.

43. Steven's policy included UM/UIM coverage in the amount of $25,000 per person and $50,000 per accident. *Id.*

44. Steven Jones was a "covered person" under policy No. GAR 016967850 7101 as the "named insured."

45. Jimmie and Kelly are also "covered persons" under Policy No. GAR 016967850 as family members as well as individuals who are entitled to recover damages because of bodily injury suffered by Steven.

46. At the time of the Collision, Jimmie and Kelly insured their 2016 Kia Optima through USAA under Policy No. CIC 009192156 7101. *See* Exhibit C, Jimmie and Kelly Jones Policy Declarations.

47. Jimmie and Kelly's policy included UM/UIM coverage in the amount of $25,000 per person and $50,000 per accident. *Id.*

48. Steven was a "covered person" under Policy No. CIC 009192156 7101 as a family member who resided in the same household as the named insured.

49. At the time of the Collision, Pamela Jones insured her 2007 Chevrolet Impala through Garrison under Policy No. GAR 015035961 7101. *See* Exhibit D, Pamela Jones Policy Declarations.

50. Pamela's policy included UM/UIM coverage in the amount of $25,000 per person and $50,000 per accident. *Id.*

51. Steven was a "covered person" under Policy No. GAR 015035961 7101 as a family member who resided in the same household as the named insured.

52. Jimmie and Kelly are also "covered persons" under Policy No. GAR 015035961 7101 as family members, as well as individuals who are entitled to recover damages because of bodily injury suffered by Steven.

53. On May 15, 2024, Plaintiffs, acting in their capacity as statutory beneficiaries of Steven Jones, notified Defendants of the Collision through counsel and informed the Defendants that Ms. Daly's insurer had tendered her policy limits of $250,000. They further notified Defendants that because the $250,000 payment is not enough to compensate for the wrongful death of Steven Jones, they would be pursuing a UIM claim. Plaintiffs made demands across all three policies. *See* Exhibit E, May 15, 2025 Letter (Demand, Pamela's Policy); Exhibit F, May 15, 2025 Letter (Demand, Steven's Policy); Exhibit G, May 15, 2025 Letter (Demand, Plaintiffs' Policy).

54. On May 24, 2024, Defendants jointly responded to Plaintiffs acknowledging that UIM coverage was owed under all three policies. Exhibit H, May 29, 2024 Letter.

55. At the same time, Defendants misrepresented that policy limits should be prorated and limited their payment to a single-coverage limit of $25,000 despite knowing Plaintiffs' damages clearly exceeded all available coverages, including the full amount of coverage available on Defendants' policies, *i.e.*, $75,000 in UIM coverage. *Id.*

56. In other words, rather than pay Plaintiffs the $75,000 owed under the USAA Policies, Defendants improperly capped coverage at $25,000 to be split across three policies. *Id.*

57. Defendants represented to Plaintiffs' coverage counsel that all three policies are identical and are accompanied by identical endorsements.

58. On September 27, 2024 and September 30, 2024, Plaintiffs, through their counsel, asked Defendants to pay UIM benefits up to the stated limits of each policy. Exhibit I, Sept. 27, 2024 Letter; Exhibit J, Sept. 30, 2024 Letter.

59. On November 20, 2024, Defendants responded to the September 30, 2024 demand, again confirming coverage "under all three USAA policies." Defendants doubled down on their misrepresentation that the applicable limit was $25,000, the single-coverage limit prorated across the three policies. Ex. A at 2.

60. On August 28, 2025, Plaintiffs provided case law supporting their demand for UIM benefits owed to them up to the full limits of the three USAA Policies. Exhibit K Aug. 28, 2025 Letter.

61. By letter dated September 5, 2025, Defendants responded to Plaintiffs' August 28, 2025 demand letter by stating, "We are unable to accept or reject your demand." Defendants further represented that they intended to provide an answer by the end of the following week. Exhibit L, September 5, 2025 Letter.

62. As of the date of this filing, Defendants have not provided any substantive response to Plaintiffs' August 28, 2025 demand, nor have they paid the benefits owed under the policies.

63. Part C- Uninsured Motorists Coverage Underinsured Motorists Coverage of the USAA Policy has a provision labeled "Other Insurance" which provides in relevant part:

> B. If there is other applicable insurance for UM Coverage or UIM Coverage available under one or more policies or provisions of coverage:
>
> > 1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance issued to you by us providing coverage on either a primary or excess basis.
> >
> > 2. Any insurance we provide with respect to a vehicle you do not own

> will be excess over any collectible insurance.
>
> 3. If the coverage under this policy is provided:
>
> > a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability under this policy bears to the total of all applicable limits of liability for coverage provided on a primary basis.
> >
> > b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability under this policy bears to the total of all applicable limits of liability for coverage provided on an excess basis.

64. Additionally, the declarations state:

> **Coverages, Limits and Premium Information**
>
> This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.

65. Defendants rely on this language in refusing to pay full benefits under each of the three USAA Policies, but these provisions are void to the extent that they contravene the UMA, which does not expressly permit (and therefore prohibits) limitations on UIM coverage based on the presence of insurance purchased by multiple parties. *E.g.*, *Cundiff*, 217 Ariz. at 360, 9 P.3d at 272; *Rashid*, 163 Ariz. at 275, 787 P.2d at 1071.

66. The USAA Policies under which Steven Jones was insured were Defendants' standard form policy in Arizona for personal (i.e., non-commercial) auto policies.

67. Neither USAA nor Garrison ever disclosed to Plaintiffs or provided UIM coverage up to the full limits of each applicable policy. Defendants, therefore, have denied Plaintiffs benefits to which they are entitled under the form policy and Arizona law.

68. As a general practice, USAA and Garrison do not disclose or provide to their insureds full UM/UIM coverage for multiple policies involving USAA form policies after a covered event.

69. USAA and Garrison knew or should have known that their policy interpretation and failures to disclose and pay UIM benefits up to full limits violated clearly established Arizona law at least as far back as the Arizona Supreme Court's 1989 decision in *Brown*, 163 Ariz. at 327, 788 P.2d at 60.

70. Defendants misrepresented the amount of UIM coverage available under the USAA Policies.

71. USAA and Garrison violated Arizona Administrative Code Sections 20-6-801(E)(3) and (G)(1)(a) by misrepresenting the amount of UIM benefits available under the USAA Policies.

72. USAA and Garrison violated Administrative Code § 20-6-801(D)(1) and (D)(2) by failing to state in writing the basis and specific policy provision on which it based its denial of Plaintiffs' claim for full UIM benefits.

73. USAA and Garrison's failures are both unreasonable and in conflict with well-established Arizona law.

74. USAA and Garrison's failures also violate its duty to find coverage, to conduct a reasonable investigation of the claim, and disclose and not to misrepresent pertinent policy provisions including the applicable policy limits.

75. USAA and Garrison's unreasonable and unlawful refusal to investigate, identify, acknowledge, disclose, and pay stacked inter-policy UIM benefits has led to underpaying Plaintiffs' UIM claim, as well as the claims of many others, and thus Defendants are paying millions of dollars less for UIM claims than their insureds are entitled to under the terms of their standardized policies.

## VI. CLASS ACTION ALLEGATIONS

76. This action is brought and may properly be maintained as a class action, as it satisfies the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23. Plaintiffs bring all claims herein individually and as a class action (for the class defined below), pursuant to Rule 23.

77. The class consists of the following:

> From the earliest time allowable by law to the date of entry of judgment, all persons who (1) were insured by USAA and/or Garrison, and who were insureds under two or more policies issued to two or more purchasers in Arizona by any insurer under common management with Garrison and/or USAA, and (2) who experienced a covered loss where the insured person received UM/UIM benefits, and (3) whose coverage benefit payment was capped by the proration of applicable policies.

78. While the exact number of members cannot be determined, the class consists of at least dozens of Arizona residents. The members of the class are therefore so numerous that joinder of all members is impracticable. The exact number of class members can readily be determined by documents produced by Defendants.

79. There are questions of fact and law common to the class, including the following:

i. Whether the Defendants' Policy impermissibly limits coverage under A.R.S. § 20-259.01;

ii. Whether Defendants misrepresented the available UM/UIM coverage limits under their form policy;

iii. Whether Defendants failed to apply the full UM/UIM limits of each policy to the losses of Plaintiffs and the Class;

iv. Whether, through the foregoing practice, Defendants breached their contracts with their insureds;

v. Whether, through the foregoing practice, Defendants breached the implied covenant of good faith and fair dealing and violated statutes governing unfair claims settlement practices including A.R.S. § 20-461, and Arizona Administrative Code § 20-6-801(D)(1) and (D)(2);

vi. Whether, through the foregoing practice, Defendants caused and will continue to cause harm to their insureds;

vii. Whether Defendants are obligated to search or reopen their closed claim files to identify, adjust and pay UM or UIM benefits they owe under Arizona law;

viii. Whether Plaintiffs and the Class are entitled to declaratory relief;

ix. Whether Defendants have an unlawful practice of attempting to evade and discourage any subsequent requests for full limits by requesting the insured sign a release of claims beyond the basis of the payment;

x. Whether Defendants' above-referenced conduct as to the Class warrants an award of compensatory damages;

xi. Whether Defendants' above-referenced conduct as to the Class warrants an award of punitive damages; and

xii. Whether Plaintiffs and the class are entitled to an award of attorney's fees.

80. Plaintiffs have the same interests in this matter as all other members of the Class, and their claims are typical of those of all members of the class. Plaintiffs' claims are coincident with and not antagonistic to those of other class members they seek to represent. Plaintiffs and all Class members have been harmed by Defendants' common course of conduct as outlined herein. The harm to each Class member was caused by USAA and Garrison's wrongful conduct.

81. Plaintiffs are committed to pursuing this action and have retained competent class counsel experienced in insurance litigation and class action litigation. Plaintiffs will fairly and adequately represent the interests of the Class members.

82. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(1)(A) because separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class.

83. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because USAA and Garrison's actions are generally applicable to the Class as a

whole, and Plaintiffs seek, inter alia, equitable remedies with respect to the Class as a whole.

84. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

85. Class certification is appropriate under Federal Rule of Civil Procedure 23(c)(4) because resolution of a key fact issue common to the Class—did USAA and Garrison's conduct violate clearly established Arizona law, breach the insurance contract and/or constitute bad faith under Arizona law—will materially advance the litigation.

86. Absent a class action, most of the members of the Class will remain ignorant of their rights and/or find the cost of litigating their claims prohibitive. Therefore, they will have no effective remedy. The class treatment of common questions of law and fact conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. USAA and Garrison have misled class members about their rights and those class members will remain ignorant of their potential claims against USAA and Garrison unless court-supervised notice is ordered.

87. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions involving the insurance industry. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of other respective Class members and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of other members of the Class.

**FIRST CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**

88. Plaintiffs incorporate by reference all prior allegations in this Complaint as if fully set forth herein.

89. Each Class member (including Plaintiffs) is insured by at least two standardized USAA Policies.

90. USAA and Garrison breached their contracts by pro-rating benefits instead of providing the full UM/UIM limits under each applicable USAA Policy, and not paying benefits that should have been paid as a result.

91. The Class (including Plaintiffs) has been and continues to be damaged by Defendants' breaches of contract.

**SECOND CLAIM FOR RELIEF**
**(BAD FAITH)**

92. Plaintiffs incorporate by reference all prior allegations in this Complaint as if fully set forth herein.

93. Inherent and implied in the USAA Policy is a covenant of good faith and fair dealing owed to Plaintiffs and the Class. Under the duty of good faith and fair dealing, an insurer must deal fairly with an insured, giving equal consideration in all matters to the insured's interests. *See, e.g.*, *Rawlings v. Apodaca*, 151 Ariz. 149, 156-57, 726 P.2d 565, 572-73 (1986).

94. The tort of bad faith arises when an insurer "intentionally denies, fails to process or pay a claim without a reasonable basis." *Noble v. Nat'l Am. Life Ins. Co.*, 128 Ariz. 188, 190, 624 P.2d 866, 868 (Ariz. 1981); *Wood v. Liberty Mut. Fire Ins. Co.*, No. CV-11-2380-PHX-GMS, 2012 WL 2798761, at *2 (D. Ariz., July 09, 2012). "The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000).

Bad faith can be established by showing "(1) the absence of a reasonable basis for denying benefits, and (2) the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Wood*, 2012 WL 2798761, at *2. In addition, under Arizona law, bad faith can be established by showing that the insurer lacked a "founded belief" for its actions because of an inadequate investigation. *Rawlings*, 151 Ariz. At 160, 726 P.2d at 576.

95. The duty of good faith and fair dealing also includes, among other things, an obligation to inform the insureds about the extent of coverage and their rights under the policy and to do so in a way that is not misleading.

96. Defendants acted objectively unreasonably as to Plaintiffs and the Class by concealing, or failing to identify, acknowledge, disclose, and pay benefits up to the stacked UM/UIM limits of the USAA Policies, and misrepresenting the benefits available under the USAA Policies.

97. Defendants acted subjectively unreasonably as to Plaintiffs and the Class by concealing, or failing to identify, acknowledge, disclose, and pay benefits up to the stacked UM/UIM limits of the USAA Policies, and misrepresenting the benefits available under the USAA Policies.

98. Defendants did so, even though they knew or should have known the UMA does not expressly permit, and therefore prohibits, reducing UIM coverage limits due to the presence of other applicable UIM policies. The Class seeks as damages the value of the unpaid UM/UIM benefits under Arizona law.

99. Defendants, therefore, acted in bad faith toward Plaintiffs and the Class.

100. Defendants' conduct as to Plaintiffs and the Class was aggravated, outrageous and consciously disregarded an unjustifiably substantial risk of significant harm to its insureds who are Class members.

101. Defendants are, therefore, liable to the Class for punitive damages, which can be proven with common evidence.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against USAA and Garrison as follows:

A. An order appointing Plaintiffs as class representatives and Robert Carey as class counsel and certifying the First Claim for Relief under Rule 23(b)(2), and (b)(3), and the Second Claim for Relief as to liability and associated punitive damages under (c)(4).

B. Compensatory damages for the Class in an amount to be proven at trial.

C. Punitive damages in an amount to be proven at trial.

D. An award of Plaintiffs' attorneys' fees pursuant to any applicable authority, including but not limited to A.R.S. § 12-341.01.

E. Statutory interest pursuant to A.R.S. § 20-462(A) from the date of the first demand for payment of UM/UIM benefits;

F. For costs and expenses incurred herein to the maximum extent permitted by law.

G. Pre-judgment and post-judgment interest to the maximum extent permitted by law.

H. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a jury trial pursuant to Federal Rule of Civil Procedure 38 for all actions so triable.

Dated: October 1, 2025

Respectfully submitted by,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: *s/ Robert. B. Carey*
Robert B. Carey
John M. DeStefano
E. Tory Beardsley
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
johnd@hbsslaw.com
toryb@hbsslaw.com

GOLDSTEIN WOODS
Evan Goldstein
706 E Bell Rd., Ste. 200
Phoenix, AZ 85022
Telephone: (602) 569-8200
Email: egoldstein@gwfirmaz.com

THE SLAVICEK LAW FIRM
Brett L. Slavicek (SBN 019306)
Justin Henry (SBN 027711)
5500 North 24th Street
Phoenix, Arizona 85016
Telephone: (602) 285-4435
Facsimile: (602) 287-9184
Email: brett@slaviceklaw.com
justin@slaviceklaw.com

*Attorneys for Plaintiffs*